UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RAMON SUERO and ROSANNA SUERO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-13014-JGD |
| FEDERAL HOME LOAN MORTGAGE | ) | |
| CORP. a/k/a FREDDIE MAC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

December 17, 2013

DEIN, U.S.M.J.

## I.   INTRODUCTION

This matter is before the court on plaintiffs' motion for a preliminary injunction,

brought pursuant to Fed. R. Civ. P. 65.  The plaintiffs are seeking an injunction enjoining

the defendant Freddie Mac from (1) taking any steps towards selling the property in

which the plaintiffs are residing at 26 Elder Street, Apt. 1, Dorchester, Massachusetts (the

"Property") pending a resolution of this litigation; and (2) taking any steps to evict the

plaintiffs during the pendency of this litigation.  After consideration of the pleadings and

oral argument of counsel, the motion is ALLOWED subject to the requirement that the

plaintiffs continue to pay $700 per month into the escrow account being maintained by

their counsel at the Harvard Legal Aid Bureau.  Counsel for the plaintiffs shall provide

proof of such payments to counsel for Freddie Mac upon request.  In addition, by

December 20, 2013, the parties shall submit a joint schedule for the speedy resolution of this litigation.

## II.  STATEMENT OF FACTS

The following facts are undisputed unless otherwise indicated, and most are taken from the plaintiffs' Verified Complaint.  Only the facts most relevant to the motion for a preliminary injunction are included herein.

The plaintiffs are the former owners and mortgagors of the Property.  The mortgage went into default and a foreclosure sale was held.  The Property was purchased by Ocwen, an affiliate of Freddie Mac.  Ocwen subsequently assigned its bid to Freddie Mac and executed a foreclosure deed in favor of Freddie Mac.  As a result, Freddie Mac now holds the title to the Property.

The plaintiffs are still living in the Property despite Freddie Mac's efforts through the Housing Court to have them evicted.  Freddie Mac commenced a summary process eviction proceeding against the plaintiffs on September 29, 2011.  On February 17, 2012, Boston Community Capital ("BCC") made an offer to purchase the Property at a level which it believed was fair market value.  As described by the plaintiffs in their Verified Complaint, "[t]hrough a special initiative designed to save homes and stabilize neighbor-hoods, Boston Community Capital purchases foreclosed homes at present fair market value and then re-sells them to the financially pre-qualified former homeowners." (Verified Complaint at 1).  The plaintiffs had been qualified to purchase their home from BCC.  However, Freddie Mac did not respond to BCC's offer.

On October 5, 2012, the plaintiffs, who were not represented by counsel, and Freddie Mac, entered into an Agreement for Judgment in the summary process proceedings. As part of the agreement, the plaintiffs were to pay $700 per month to Freddie Mac, which payments would be returned in full if the plaintiffs vacated the Property before December 31, 2012. Pursuant to this Agreement, Freddie Mac agreed "to present any offers made by Boston Community Capital on behalf of [the Sueros] to Federal Home Loan Mortgage Corporation to repurchase the property." (Verified Complaint Ex. D). At no time did Freddie Mac indicate that it would not consider offers for less than the full amount due and owing under the loan.

BCC made additional offers to purchase the Property, in an increased amount, in October 2012 and January 2013, but Freddie Mac never responded to the offers. At a hearing in the summary process action on February 7, 2013, the Housing Court ordered Freddie Mac to respond in writing to BCC's offer. At the next hearing, on May 16, 2013, Freddie Mac submitted an affidavit to the court representing that BCC's offer was being declined because it was "significantly below market value[.]" (Verified Complaint Ex. I). BCC increased its offer to what Freddie Mac had indicated was in the range of fair market value. On May 29, 2013, Freddie Mac took the position at a Housing Court hearing that it would only agree to a sale price in the full amount of the debt if the property was being resold to the plaintiffs. While BCC subsequently increased its offer again, it did not offer the full amount of the debt, which was well in excess of fair market value.

Meanwhile, the plaintiffs had obtained counsel.  In January 2013, plaintiffs, through counsel, filed a Motion to Enforce the Agreement or in the Alternative to Vacate the Agreement for Judgment.  The motion was amended in June 2013, at which time the plaintiffs also moved to add a claim alleging a violation of Mass. Gen. Laws ch. 93A and of ch. 244, § 35C.  On October 30, 2013, the Housing Court issued an order allowing the plaintiffs to vacate the Agreement for Judgment.  The court did not allow the plaintiffs to add the statutory claims, ruling that they were not appropriate in a summary process action.  The plaintiffs have continued to pay $700 per month to their counsel, who is holding the funds in an escrow account.

On November 18, 2013, the plaintiffs commenced the instant action in Massachusetts Superior Court for Suffolk County by filing a Verified Complaint along with a motion for a preliminary injunction seeking to enjoin Freddie Mac from selling the Property or taking any steps to evict the plaintiffs from the Property.  Plaintiffs' principle arguments are that Freddie Mac's refusal to sell the Property to BCC because BCC intends to sell the Property back to its former owners violates Mass. Gen. Laws ch. 244, § 35C(h), and is an unfair and deceptive act or practice in violation of Mass. Gen. Laws ch. 93A.[1]

---

[1]  The plaintiffs also challenge Freddie Mac's conduct in the Housing Court in inducing the plaintiffs to enter into an Agreement for Judgment requiring the plaintiffs to make payments and move out of the Property in three months by promising to consider BCC's offers, without either advising the plaintiffs that Freddie Mac would not consider an offer from BCC for less than the full amount of the debt, and/or without considering the various offers made by BCC.  In light of the fact that this court finds that the plaintiffs are likely to prevail on other claims, it will not

On November 21, 2013, the Boston Housing Court held a trial in the Summary

Process eviction action commenced by Freddie Mac.  The Housing Court took the matter

under advisement and is awaiting a ruling on the preliminary injunction motion.  On

November 25, 2013, Freddie Mac removed the Superior Court action to this court, and

opposed the motion for a preliminary injunction.  A hearing on the motion was held on

December 10, 2013.

In opposing the motion for a preliminary injunction, Freddie Mac filed an

Opposition in which it argued, *inter alia*, that it was not obligated to sell the Property to

anyone, and therefore could not be liable for refusing to sell it to BCC.  (See Docket No.

12 at 5 ("The owner of real property cannot be compelled to sell his property to anyone,

particularly where the property is not for sale and the buyers [sic] offer is contingent.")).

At the hearing, however, Freddie Mac took the position that it was precluded by a

"directive" from accepting less than the full amount due on the note from the

plaintiffs/borrowers.  Therefore, counsel argued that Freddie Mac was prohibited from

selling the property to BCC for less than the full amount due, because BCC intends to sell

it back to the former owners.  The plaintiffs represented to the court that this was the first

time that any "directive" had been brought to their attention, and there is no mention of it

in the pleadings.  While Freddie Mac submitted materials to the court relating to Freddie

Mac's "policy" of not writing down principal amounts due while restructuring loans,

---

address these claims further.  This should not be read as an indication of the court's opinion of the
plaintiffs' likelihood of success on these claims.

none of the materials seems to include a prohibition against selling property for less than the full amount of the loan post-foreclosure.  The existence of such a "directive," its enforceability, and its affect on the plaintiffs' claims that Freddie Mac engaged in fraud and misrepresentations (and violated ch. 93A) by not disclosing this directive, will have to be explored in connection with the trial of this matter, since these issues have not been adequately addressed at this preliminary stage.

### III.  ANALYSIS

#### A.  Standard of Review

"In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest."  Corporate Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)).  Applying these principles to the instant case compels the conclusion that the preliminary injunction should be issued.

**B.**     <u>**Likelihood of Success on the Merits**</u>

<u>**Statutory Violation**</u>

Mass. Gen. Laws ch. 244, § 35C(h), effective November 1, 2012, provides as

follows:

> In all circumstances in which <u>an offer to purchase either a mortgage loan or residential property</u> is made by an entity with a tax-exempt filing status under section 501(c)(3) of the Internal Revenue Code, or an entity controlled by an entity with such tax exempt filing status, <u>no creditor</u> shall require as a condition of sale or transfer to any such entity any affidavit, statement, agreement or addendum limiting ownership or occupancy of the residential property by the borrower and, if obtained, such affidavit, statement, agreement or addendum shall not provide a basis to avoid a sale or transfer nor shall it be enforceable against such acquiring entity or any real estate broker, borrower or settlement agent named in such affidavit, statement or addendum.

(Emphasis added).[2]  In the context of this provision, a "creditor" is defined as follows:

> "Creditor", a <u>person or entity that holds or controls,</u> partially, wholly, indirectly, directly or in a nominee capacity, <u>a mortgage loan securing a residential property,</u> including, but not limited to, an originator, holder, investor, assignee, successor, trust, trustee, nominee holder, Mortgage Electronic Registration System or mortgage servicer, including the Federal National Mortgage Association or the <u>Federal Home Loan Mortgage Corporation</u>. The term creditor shall also include any servant, employee or agent of a creditor.

(Emphasis added).  <u>Id.</u> § 35C(a).  Finally, "mortgage loan" is defined as follows:

> "Mortgage loan", a loan to a natural person made primarily for personal, family or household purposes secured wholly or partially by a mortgage on residential property.

(Emphasis added).  <u>Id.</u>

It is undisputed, as plaintiffs have alleged, that the purpose of this statute was "to prohibit real estate owners from conditioning sales to not-for-profit institutions on

---

[2]  According to the plaintiffs, government entities, including Freddie Mac, used to require the affidavits referenced in the statute.

promises that the former owner will not own or occupy the property." (See Motion for Prelim. Inj. (Docket No. 1-1) at 4-5). Plaintiffs contend that Freddie Mac has violated this statute by refusing to sell to BCC. For its part, Freddie Mac contends that the statute has no application in the instant case because it only applies to pre-foreclosure transactions. Since the foreclosure sale of the Property was consummated, Freddie Mac argues, there is no longer a "mortgage loan" and Freddie Mac contends that it can condition a sale on a promise not to re-sell to the plaintiffs.

The plaintiffs have submitted a letter from the Massachusetts Attorney General's Office to the Federal Housing Finance Agency dated February 11, 2013, in which the Attorney General's Office has unequivocally asserted that Mass. Gen. Laws ch. 244, § 35C(h) applies both to "a short sale or post-foreclosure sale[.]" (Docket No. 17-1 at 2). Thus, the evidence before this court is that the statute was intended to apply to the present, post-foreclosure, situation. According to the Attorney General's Office, "[t]he Massachusetts Legislature has prohibited the [government sponsored entities] from rejecting an otherwise valid offer to purchase property at fair market value simply because the purchaser might later sell the property back to the original homeowner." Id. If, as the Attorney General argues, the statute applies to post-foreclosure transactions, Freddie Mac is likely to be found to have violated at least the spirit of the statute by refusing to sell to BCC, regardless of whether it required an affidavit or written agreement that the borrowers would not reoccupy the premises.

The language of § 35C, and its companion statute, ch. 244, § 35B, speak in terms of preventing foreclosures.  Thus, Freddie Mac's argument, that the statute was directed to pre-foreclosure transactions, finds support in the language of the statute.  On the other hand, as recognized by the Attorney General, the problem that the statute seeks to address affects both pre and post-foreclosure transactions.  Moreover, Freddie Mac's involvement arises out of the fact that it held a mortgage on the Property and it is seeking payment on what was originally a mortgage loan.  Thus, the question whether Mass. Gen. Laws ch. 244, § 35C(h) expressly applies to Freddie Mac's post-foreclosure conduct is not easily answered.

However, the fact that Freddie Mac may not have technically violated the statute does not end the inquiry.  Rather, based on the present record, this court finds that the plaintiffs are likely to prevail on their contention that the conduct of Freddie Mac in refusing to accept a market value offer simply because the property was going to be resold to the original homeowner is a violation of Mass. Gen. Laws ch. 93A.  The clear intent of the Massachusetts statutory scheme was to stabilize communities and to allow homeowners in financial difficulties to remain in their homes.  As the Attorney General has explained, "policies that prohibit homeowner 'buyback' of properties" is inconsistent with Massachusetts laws which were designed to protect consumers.  (See Docket No. 17-1 at 1).  Chapter 93A is broad enough to cover this conduct.[3]  See Commonwealth v.

_____

[3]  In addition, the plaintiffs have asserted a facially persuasive claim that if Freddie Mac had no intention of accepting any offer by BCC because it involved a re-sale to the prior owners,

<u>Fremont Invest. & Loan</u>, 452 Mass. 733, 749, 897 N.E.2d 548, 560 (2008) (where

lender's conduct was not expressly precluded by statute designed to protect mortgagors,

93A still applied since "the question is whether the act may be read to establish a concept

of unfairness that may apply in similar contexts").

### Mass. Gen. Laws ch. 93A

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws

ch. 93A, § 2(a).  Pursuant to § 11:

> Any person who engages in the conduct of any trade or commerce
> and who suffers any loss of money or property, real or personal, as a
> result of the use or employment by another person who engages in
> any trade or commerce of an unfair method of competition or an
> unfair or deceptive act or practice declared unlawful by section two
> ... may, as hereinafter provided, bring an action.

Mass. Gen. Laws ch. 93A, § 11.  The statute "'was designed to encourage more equitable

behavior in the marketplace and impose liability on persons seeking to profit from unfair

practices.'"  <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998)

(quoting <u>Linkage Corp. v. Trs. of Boston Univ.</u>, 425 Mass. 1, 25, 679 N.E.2d 191, 208

(1997) (citation, internal quotation marks and alterations omitted)).  While the statute

does not specifically define the prohibited conduct, it is generally recognized that "[a]

---

Freddie Mac may be liable for misrepresentation in connection with its attempts to resolve the
Housing Court action, as discussed above.  This, in turn, may constitute a violation of Mass. Gen.
Laws ch. 93A.  <u>See</u> <u>Marram v. Kobrick Offshore Fund, Ltd.</u>, 442 Mass. 43, 62, 809 N.E.2d 1017,
1032 (2004) (recognizing that "a negligent misrepresentation may be so extreme or egregious as
to constitute a violation of G.L. c. 93A, § 11").

practice is unfair if it is within the penumbra of some common-law, statutory, or other

established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and

causes substantial injury to other businessmen." Linkage Corp., 425 Mass. at 27, 676

N.E.2d at 209 (citation, internal quotation marks and alterations omitted).  "[T]he

existence of unfair or deceptive acts ordinarily must be determined from the circum-

stances of each claim." Marram, 442 Mass. at 61, 809 N.E.2d at 1032 (internal citations

omitted).  Here, the Massachusetts legislature made it clear that homeowners should be

allowed to repurchase their homes from non-profit third-parties.  Freddie Mac's disregard

of this policy, which was designed to benefit consumers, may very well be a violation of

Mass. Gen. Laws ch. 93A.

Freddie Mac argues that it cannot be held liable under Mass. Gen. Laws ch. 93A

because it was not engaged in "trade or commerce."  First, it argues that it merely filed

litigation, and that such conduct, standing alone, is insufficient to constitute trade or

commerce.  In addition, Freddie Mac contends that it has no business relationship with

the plaintiffs, since it was only trying to evict them.  It further argues that it has no

business relationship with BCC, rather it simply rejected BCC's unsolicited offers.  This

court concludes that despite these protestations, Freddie Mac was engaged in trade or

commerce.

Mass. Gen. Laws ch. 93A, § 1 provides that "trade" or "commerce" "shall include

the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of

any services . . . ."  This definition of "trade and commerce" "is open-ended to a

considerable degree because, although it states certain activities that are included, it does

not exclude other activities." Riseman v. Orion Research Inc., 394 Mass. 311, 313, 475

N.E.2d 398, 399 (1985).  The present record indicates that Freddie Mac has engaged in

trade or commerce so as to come within the purview of ch. 93A.

 By commencing the Housing Court summary process action, Freddie Mac was

taking the first steps in offering the Property for sale, rent or lease — conduct which

clearly falls within the statutory definition of trade or commerce.  In fact, according to the

plaintiffs, Freddie Mac is proceeding with the Housing Court litigation only because it

has wrongfully refused the offers made by BCC on behalf of the plaintiffs.[4]  Thus, the

litigation was a step in furtherance of the sale of the property, and Freddie Mac's conduct

cannot be considered as merely filing litigation.  Similarly, Freddie Mac's course of

action vis-à-vis the plaintiffs, and in connection with its consideration (or lack thereof) of

BCC's purchase offer, were all steps taken in furtherance of its efforts to sell the

Property.  Such conduct is governed by Mass. Gen. Laws ch. 93A.  See generally

Greenfield Country Estates Tenants Ass'n v. Deep, 423 Mass. 81, 87, 666 N.E.2d 988,

993 (1996) (statute expressly provides that failure of owner of manufactured housing

community to advise tenants of offer to sell property to third party so that they can

exercise right of first refusal to purchase the property is covered by Mass. Gen. Laws ch.

93A).

---

 [4] While there is some indication in the record that Freddie Mac may have to offer the
property for sale publicly, this has not been developed in the record presently before the court.

Freddie Mac's contention that it did not have a business relationship with either the plaintiffs or BCC is equally unavailing. "General Laws c. 93A regulates trade and commerce 'directly or indirectly affecting the people of this commonwealth'" and a claim of unfair and deceptive act or practice may be brought by "any person (other than a businessperson entitled to bring an action under § 11)" who has been injured by the employment of such an act. See Ciardi v. F. Hoffmann-LaRoche, Ltd., 436 Mass. 53, 58-59, 762 N.E.2d 303, 308 (2002) (citing Mass. Gen. Laws ch. 93A, §§ 1, 2). There is no requirement of privity between the consumer and actor. Id. at 60, 762 N.E.2d at 310. See also Kattar v. Demoulas, 433 Mass. 1, 14-15, 739 N.E.2d 246, 258 (2000) ("Parties need not be in privity for their actions to come within the reach of c. 93A).

Based on the record presently before this court, this court finds that the plaintiffs have met their burden of proving a likelihood of success on the merits that Freddie Mac's refusal to entertain fair market value offers from BCC violates ch. 93A.

## C.   __Irreparable Harm__

There is little question that the plaintiffs have met their burden of proving a likelihood of irreparable harm if the preliminary injunction is not issued. Absent the ability of BCC to purchase the property for resale to the plaintiffs, the plaintiffs will be forced to leave their home. Absent an injunction, Freddie Mac is apparently not willing to entertain an offer from BCC unless it is for the full amount of the debt. Therefore, the plaintiffs run the very real risk of being ordered out of their home at the completion of the

-14-

summary process proceedings, even though there is a buyer ready, willing and able to offer the fair market value of the Property.

Freddie Mac's contention that it will suffer irreparable harm if the injunction issues is not persuasive. As an initial matter, Freddie Mac argues that it will lose the opportunity to sell or rent the property. If, however, the plaintiffs prevail, there will be a ready, willing and able buyer without delay, so any lost opportunity would be minimal. Moreover, there is no evidence before this court that the occupied Property is losing value while this litigation is proceeding. Thus, if Freddie Mac prevails, it will be in the same position as it is now vis-à-vis the sale of the Property.

Furthermore, in general, "economic loss alone does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction." Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643, 506 N.E.2d 140, 142 (1987). This is not a case where "recoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business." Id. There is no contention that the continued viability of Freddie Mac is dependent upon monthly payments from the plaintiffs.

Freddie Mac has requested that this court order the plaintiffs to pay $1,300 per month, which it now contends is the monthly expenses it is incurring in connection with the Property. However, in the summary process action Freddie Mac set the amount at $700 per month, and the plaintiffs have been paying that amount into escrow. This court finds it appropriate to continue to have those funds paid into plaintiffs' counsel's escrow

account so that the funds are available for Freddie Mac, either if Freddie Mac prevails or if the Property is sold to BCC and the escrowed funds are used to reduce the plaintiffs' debt.  Given the expedited schedule during which this entire litigation will be resolved, there is no basis to recalculate plaintiffs' monthly obligations.

In sum, the balance of the harm which may result if an injunction is, or is not, issued, weighs in favor of the plaintiffs.  They have met their burden of proving that they will suffer irreparable harm if the injunction is not issued, while Freddie Mac will not suffer irreparable harm if the injunction is awarded.

### D.    Public Policy

The issuance of a preliminary injunction is consistent with public policy.  As evidenced by Mass. Gen. Laws ch. 244, § 35C, the Massachusetts Legislature has determined that allowing the sale of property to third-parties for resale to the defaulting home owner is in the best interest of the Commonwealth.  Unless a preliminary injunction is issued in this case, there is no possibility that the Property will remain in the plaintiffs' hands.  The plaintiffs, as well as the other members of the public, should be given the opportunity to litigate whether Freddie Mac's policy, which is inconsistent with that of the Massachusetts Legislature, should be enforced in the Commonwealth of Massachusetts.

### ORDER

The plaintiffs' Motion for a preliminary injunction (Docket No. 1-1) is ALLOWED.  The defendant Freddie Mac is enjoined from (1) taking any steps towards

selling the property in which the plaintiffs are residing at 26 Elder Street, Apt. 1,

Dorchester, Massachusetts pending a resolution of this litigation; and (2) taking any steps

to evict the plaintiffs during the pendency of this litigation.  This injunction is subject to

the requirement that the plaintiffs' continue to pay $700 per month into the escrow

account being maintained by their counsel at the Harvard Legal Aid Bureau.  Counsel for

the plaintiffs shall provide proof of such payments to counsel for Freddie Mac upon

request.  In addition, by December 20, 2013, the parties shall submit a joint schedule for

the speedy resolution of this litigation.

   / s / Judith Gail Dein                        
Judith Gail Dein
U.S. Magistrate Judge
