# Exhibit C

 **Federal Housing Finance Agency**
Constitution Center
400 7th Street, S.W.
Washington, D.C. 20024
Telephone: (202) 649-3800
Facsimile: (202) 649-1071
www.fhfa.gov

CONFIDENTIAL

January 31, 2013

Lisa R. Dyen
Office of the Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, Massachusetts 02108

Dear Ms. Dyen:

Thank you for your letter dated January 7, 2013, which sets forth much of our conversation regarding Fannie Mae's and Freddie Mac's loss mitigation and servicing policies. FHFA would like to clarify a few points raised in your letter and in our subsequent discussion of January 11, 2013.

Foreclosure Postponement Requests

The letter discusses Servicing Alignment Initiative (SAI) requirements and servicer compensatory fees as a result of exceeding a particular state foreclosure timeline. It would not be accurate to say that "servicers are no longer directly penalized for exceeding state foreclosure timelines."

If the loan is successfully modified, the Servicer will not be subject to any foreclosure timeline compensatory fee and, in fact, will be paid incentives for having modified the loan in addition to preserving the Servicer's fee income paid over the life of the re-performing modified loan. However, GSE Servicers are still subject to foreclosure timelines and associated compensatory fees once the loan goes to foreclosure sale. In Massachusetts, a GSE Servicer is not subject to compensatory fees for foreclosure timeline violations unless all foreclosure sales in a particular month exceeded, on average, 350 days after the due date of the borrower's last payment. Although a particular foreclosure sale may be over the timeline, other sales that are under the timeline within Massachusetts will offset the amount of time any sale is over the timeline. As a result, a servicer may not pay any compensatory fees in Massachusetts even if some of the sales exceed the 350 day timeline, provided, the average foreclosure timeline for all sales was less than 350 days. Further the GSEs automatically extend the timeline for a variety of specified reasons (*e.g.*, bankruptcy, unemployment forbearance, military indulgence, *etc.*) and allow Servicers to appeal timeline and compensatory calculations for delays that are beyond their control.

Fannie Mae and Freddie Mac Response Times

As discussed, there should be no delays to the short sale or loan modification process due to Servicers waiting for a response from either Fannie Mae or Freddie Mae. FHFA has worked with the Enterprises to remove obstacles and streamline the short sale and loan modification process so that more borrowers can be assisted. For example, the GSEs require Servicers to make a decision on a short sale within 30 days of receiving a complete application and an additional 30 days beyond that if they need more time to negotiate with third parties. A final decision is required by day 60. Moreover, the GSEs have provided detailed requirements to their servicers about loss mitigation eligibility so they can approve most common forms of loan modifications, short sale and deeds in lieu of foreclosure without involving Fannie Mae or Freddie Mac so the processing time could be even shorter.

Fannie Mae and Freddie Mac Contact Names

You also requested confirmation that ▇▇▇▇ at Fannie Mae is the appropriate contact person for more sensitive or time sensitive concerns. ▇▇▇▇ is the appropriate contact for those types of concerns. At Freddie Mac, you should contact ▇▇▇▇ at ▇▇▇▇ or ▇▇▇▇.

Short Sale Restrictions

As to the new Massachusetts requirement regarding purchase of a property by a 501(c)(3) entity which states:

> "In all circumstances in which an offer to purchase either a mortgage loan or residential property is made by an entity with a tax-exempt filing status under 501(c)(3) of the Internal Revenue Code, or an entity controlled by an entity with such tax exempt filing status, no creditor shall require as a condition of sale or transfer to any such entity any affidavit, statement, agreement or addendum limiting ownership or occupancy of the residential property by the borrower and, if obtained, such affidavit, statement, agreement or addendum shall not provide a basis to avoid a sale or transfer nor shall it be enforceable against such acquiring entity or any real estate broker, borrower or settlement agent named in such affidavit, statement or addendum."

Freddie Mac and Fannie Mae require that all parties to a traditional short sale transaction must execute an affidavit stating that the sale is an arm's-length transaction. Short sales have become an important alternative to foreclosure. However, these sales have been accompanied with a significant rise in related mortgage fraud and FHFA and the GSEs believe that the requirement for an affidavit that the sale is an arm's length transaction helps to prevent mortgage fraud and protect homeowners and communities. Prior to this requirement, the Enterprises became aware of instances where nonprofit entities purchased the homes of certain borrowers following a short sale and resold the homes back to the former borrowers at an amount less than the mortgage debt outstanding, but at a profit to the entity. Additionally, fostering this type of transaction could lead to sham nonprofits created just for this purpose and potentially harming homeowners as well.

Also, there are concerns that in many cases, these borrowers were eligible for a loan modification that they would avoid in order to secure a repurchase from a nonprofit at a larger discount and without other obligations that exist, including second liens. This would run counter to federal and state efforts to provide homeowners an "affordable" alternative to foreclosure; these programs are not designed to provide "cheapest" program as that result would increase costs to taxpayers and to neighborhoods through further depressed home prices.

Fannie Mae and Freddie Mac have several foreclosure alternatives that allow borrowers to retain their home, including HAMP and the SAI Standard Modification, both of which provide for principal forbearance with loans to be repaid up to 40 years after modification under HAMP and always 40 years later with a Standard Modification. FHFA, along with GSEs, continue to work on ways to assist more borrowers, while preventing fraud upon the GSEs and losses to the U.S. taxpayer.

Conclusion

The opportunity to work with you and to discuss issues, including many beyond the scope of this letter addressing matters relating to servicing requirements, has proven valuable to FHFA and to the GSEs and I hope has provided benefits to you. Do not hesitate to call with questions to me directly or to the Enterprises.

With all best wishes, I am

Sincerely,

Alfred M. Pollard
General Counsel